IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA, :
DEPARTMENT OF ENVIRONMENTAL :
PROTECTION, :
  :
          Plaintiff, :
  :
        v. : CIVIL ACTION NO. 02-CV-2888
  :
CONCEPT SCIENCES, INC., :
PPT RESEARCH, INC., IRL E. WARD, JR., :
BRIAN D. HEATH, LEHIGH VALLEY :
REALTY, III, JAMES H. READINGTON, :
JOHN ADAMS, and ESTATE OF :
JACOB QUICK c/o JUDITH QUICK, :
  :
       Defendants. :

## COMPLAINT

The Commonwealth of Pennsylvania, Department of Environmental Protection

("Department"), through its undersigned counsel, hereby alleges the following:

### STATEMENT OF THE CASE

1.     This is a civil action brought under sections 107 and 113(g)(2) of the

Comprehensive Environmental Response, Compensation and Liability Act of 1980

("CERCLA"), *as amended*, 42 U.S.C. §§ 9607 and 9613(g)(2); section 2201 of the Declaratory

Judgment Act; 28 U.S.C. § 2201; section 507 of the Pennsylvania Hazardous Sites Cleanup Act

("HSCA"), 35 P.S. §§ 6020.507; and the Pennsylvania Declaratory Judgments Act, 42 Pa.C.S.A

§ 7531, *et seq*., seeking: (1) reimbursement of the Department's response costs incurred in its

response to the release and threat of release of hazardous substances at the Concept Sciences, Inc.

Site in Hanover Township, Lehigh County, Pennsylvania ("Site"), and (2) a declaratory judgment

on liability for response costs that will be binding on any subsequent action or actions by the

Department to recover future response costs incurred in connection with the Site.

## JURISDICTION AND VENUE

2.      This court has jurisdiction over the CERCLA subject matter claims set forth in Count I pursuant to 42 U.S.C. §§ 9607(a) and 9613(b) and 28 U.S.C. § 1331.

3.      This court has supplemental jurisdiction over the subject matter claims alleged in Counts II and III pursuant to 35 P.S. § 6020.507, 42 Pa.C.S.A. § 7532 and 28 U.S.C. § 1367 for the following reasons:

        a.      The claims alleged in Counts II and III arise from the same set of operative facts as the CERCLA claim and are so related to the CERCLA claim alleged in Count I that the claims in Counts I, II and III form part of the same case or controversy under Article III of the United States Constitution.

        b.      The claims alleged in Counts II and III neither raise a novel or complex issue of state law, nor substantially predominate over the CERCLA claim alleged in Count I.

        c.      There are no compelling reasons for the court to decline jurisdiction over the claims which are alleged in Counts II and III.

4.      Venue is proper in this judicial district pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b) and (c), because the claims arose within the Eastern District of Pennsylvania, and/or the Defendants reside or may have their principle place of business in the Eastern District of Pennsylvania.

## PARTIES

5.      The Department is an agency with the duty and authority to administer and enforce the Comprehensive Environmental Response, Compensation and Liability Act of 1980,

*as amended,* 42 U.S.C. §§ 9601-9675; the Pennsylvania Hazardous Sites Cleanup Act, Act of

October 18, 1988, P.L. 756, No. 108, *as amended*, 35 P.S. §§ 6020.101-6020.1305; and the

Pennsylvania Solid Waste Management Act, Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S.

§§ 6018.101-6018.1003; Section 1917-A of the (Pennsylvania) Administrative Code of 1929,

Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 510–17; and the rules and regulations

promulgated under these statutes.

6.      Defendant Concept Sciences, Inc. ("CSI") is a Pennsylvania corporation with a

registered office at 1493 Amherst Court, Bethlehem, Pennsylvania 18015, and its principle place

of business at 450 Allentown Drive, Allentown, Pennsylvania 18103.  Until February 19, 1999,

CSI operated a hydroxylamine processing facility located in the Lehigh Valley Industrial Park III

at 749 Roble Road in Hanover Township, Lehigh County, Pennsylvania.

7.      Defendant PPT Research, Inc. ("PPT") is a Pennsylvania corporation with a

registered office of 1620 Pond Road, Suite 200, Allentown, Pennsylvania 18104, and a principle

place of business located at 450 Allentown Drive, Allentown, Pennsylvania 18103.

8.      Defendant Irl E. Ward, Jr. ("Ward") is a person who resides at 1493 Amherst

Court, Bethlehem, Pennsylvania 18015.  Ward is the President and/or Chief Executive Officer of

CSI, and has held that position at all times relative hereto.  Ward is also the President of PPT.

9.      Defendant Brian D. Heath ("Heath") is a person who resides at 1 Saratoga Lane,

Harleysville, PA 19438.  At all times relevant hereto, Heath was the Operations Manager of CSI.

Heath was the initial Chief Executive Officer and President of PPT, and he currently holds the

position of Vice President at PPT.

10.     Defendant Lehigh Valley Realty III ("Lehigh") is a partnership of the State of New Jersey with its principle place of business at 101 Eisenhower Parkway, Roseland, NJ 07068. Lehigh is the owner of the property located at 749 Roble Road in Lehigh Valley Industrial Park III, Hanover Township, Pennsylvania.

11.     Defendant James H. Readington ("Readington") is a person who resides at 2286 Brookside Drive, Martinsville, NJ 08836.  Readington is a general partner in Lehigh.

12.     Defendant John Adams ("Adams") is a person who resides at 15 Kinney Place, Pompton Plains, New Jersey 07044.  Adams is a general partner in Lehigh.

13.     Defendant Estate of Jacob Quick ("Quick") is a trust represented by Judith Quick with a mailing address of P.O. Box 702, Nokomis, Florida 34274.  Quick is a general partner in Lehigh.

## GENERAL ALLEGATIONS

### The Site

14.     The Site consists of the property located at 749 Roble Road in the Lehigh Valley Industrial Park III, in Hanover Township, Lehigh County, Pennsylvania ("Roble Road Property"), as well as adjacent and nearby properties which were impacted by the release of hazardous substances and contaminants as a result of an explosion at the Roble Road Property on February 19, 1999.  The Site includes all surface and subsurface areas where hazardous substances came to be located, as provided for in the definition of "facility" under section 101(9) of CERCLA, 42 U.S.C. § 9601(9), and in the definition of "site" under section 103 of HSCA, 35 P.S. § 6020.103.

4

**Background**

15.    CSI operated a hydroxylamine processing facility at the Roble Road Property.

16.    CSI rented a section of the building located on the Roble Road Property from Lehigh ("Lehigh building") for its hydroxylamine processing operations.

17.    As part of its operations, CSI stored materials at the Roble Road Property, including, but not limited to, hydroxylamine, hydroxylamine sulfate, potassium hydroxide, and potassium sulfate.

18.    In the evening of February 19, 1999, an explosion at CSI's facility at the Roble Road Property killed five people and resulted in the release of hazardous substances and contaminants.

19.    The explosion resulted in the release and the threat of release of hazardous substances and contaminants, including, but not limited to, hydroxylamine, hydroxylamine sulfate, potassium hydroxide, and potassium sulfate.  Drums of hydroxylamine and other materials, many of them damaged from the explosion, were spread about the Site.

20.    Released materials that had been stored in the CSI facility flowed into floor drain[s] located in the facility and flowed to pump stations in the Hanover Township sewage collection system ("Hanover pump stations"), and subsequently to the Catasauqua Wastewater Treatment Facility ("Catasauqua Facility").  Samples of influent collected at Catasauqua Facility on February 20,1999 exhibited a pH ranging from 12.5 to 14.  Samples of influent collected at the Hanover pump stations on the same date exhibited a pH in excess of 12.5.

21.    As a result of the release of liquids exhibiting a pH in excess of 12.5 to the Hanover pump stations and the Catasauqua Facility, it was necessary to pump such liquids out of

the pump stations and the Catasauqua Facility for proper disposal at a permitted facility.

22.    A sample of water collected from the swale in the rear of the Site exhibited a pH of greater than 12.5 during the response to the February 19, 1999 explosion.

23.    Field measurements of runoff collected from the Site during the response to the February 19, 1999 explosion exhibited a pH of less than 2.0 and greater than 12.5.

24.    As a result of the release and threat of release of hazardous substances and contaminants at the Site, it was necessary to construct berms, diversion trenches and two collection ponds (hereinafter referred to as the "containment system") to prevent such contamination from flowing off Site.  Maintenance of this containment system included, but was not limited to, the pumping of caustic and/or acidic liquids from the collection ponds, treating such liquids to neutralize the excessively low or high pH, and transporting such liquids to a wastewater treatment facility for disposal as residual waste.

25.    During the week of February 22, 1999, the Department attempted to secure assurances from CSI that CSI and/or its agents would enter into an agreement with Alvin H. Butz, Inc.("Butz") and its subcontractors to construct and maintain the containment measures described in paragraph 24 above.

26.    During the week of February 22, 1999, the Department attempted to secure assurances from Lehigh that Lehigh and/or its agents would enter into an agreement with Butz and its subcontractors to construct and maintain the containment measures described in paragraph 24 above.

27.    At the close of business on Friday, February 26, 1999, neither CSI, nor Lehigh, nor their respective agents had agreed to assure the construction and maintenance of the

6

containment system.

28.    Pursuant to section 501 of HSCA, 35 P.S. § 6020.501, the Department entered into a contract with Butz to implement the measures necessary to construct the berms, diversion trenches and collection ponds as described in paragraph 24 above.

29.    Pursuant to its authority under section 501 of HSCA, 35 P.S. § 6020.501, the Department arranged for Butz to operate and maintain the containment system as necessary to ensure that no further releases of hazardous substances and contaminants would occur as a result of predicted precipitation over the weekend of February 27 to 28, 1999.

30.    During the period of February 27 through March 1, 1999, the containment system collected approximately 11,000 gallons of runoff from the Site.  Samples of said runoff exhibited a pH of less than 2.0.  Butz treated and transported such liquid runoff to a wastewater treatment facility for disposal as a residual waste.

31.    The Department, pursuant to its authority under section 501 of HSCA, 35 P.S. § 6020.501 arranged for Butz and its subcontractors to maintain the containment system through March 3, 1999.

32.    Because of the threat to human health and the environment posed by conditions at the Site, and pursuant to section 501 of HSCA, 35 P.S. § 6020.501, the Department determined that a prompt interim response action was appropriate at the Site.

33.    During the week of March 1, 1999, a winter storm watch for the Allentown area called for heavy rain and/or wet snow and high winds.  The approaching storm heightened existing concerns about the compromised structural integrity of the Lehigh building as a result of

the CSI explosion, as well as concerns about the drums of hydroxylamine and other materials that remained in the Lehigh building.

34.    The Department requested that CSI provide assurances by 4:00 p.m. on March 3, 1999, that response actions to abate the release and threatened release of hazardous substances and contaminants at the Site would be implemented to the Department's satisfaction, and that the containment system for contaminated runoff from the Site would continue to be maintained and operated.

35.    At 4:00 p.m. on March 3, 1999, CSI requested, and the Department provided, a short extension to attempt to reach an agreement pursuant to which CSI would implement a response action.

36.    An agreement could not be reached within the time provided by the extension, and the Department terminated negotiations at 5:00 p.m. on March 3, 1999, and verbally informed CSI that the Department would be implementing a response action to abate the release of hazardous substances and contaminants at the Site.

37.    On March 4, 1999, the Department initiated a Prompt Interim Response at the Site.

38.    By letters dated March 9, 1999 to counsel for CSI and Lehigh, the Department confirmed that the Department had initiated a Prompt Interim Response at the Site.

39.    The Prompt Interim Response included, but was not limited to, the demolition of the CSI section of the Lehigh building, the disposal of hazardous substances and contaminants remaining in tanks and drums, the disposal of drums and other containers, maintenance of Site

security, decontamination and removal of debris, excavation and removal of contaminated soil, and collection of soil and water samples.

## Administrative Record

40.    Pursuant to section 506 of HSCA, 35 P.S. § 6020.506, the Department compiled an Administrative Record in which it documented the selection of its response action to address contamination at the Site.

41.    On March 27, 1999, the Department placed a notice in the *Pennsylvania Bulletin* to publish the opening and closing dates of the comment period and the date and time of the public hearing regarding the Prompt Interim Response pursuant to section 506 of HSCA, 35 P.S. § 6020.506.

42.    On March 27, 1999, the Department placed a notice in *The Morning Call* to publish the opening and closing dates of the comment period and the date and time of a public hearing regarding the Prompt Interim Response pursuant to section 506 of HSCA, 35 P.S. § 6020.506.

43.    Pursuant to section 506(b) of HSCA, 35 P.S. § 6020.506(b), the Department mailed notices to known responsible parties to inform them of the opening and closing dates of the comment period and the date and time of the public hearing regarding the Prompt Interim Response.

44.    On May 6, 1999, the Department held a public hearing on the Prompt Interim Response pursuant to section 506(d) of HSCA, 35 P.S. § 6020.506(d).

45.    On September 26, 1999, the Department issued its Statement of Decision in which it selected an interim response providing for removal and disposal of hazardous substances and

contaminants located at the Site.

## Response Action

46.     Pursuant to its authority under, *inter alia*, sections 501(a) and 505 of HSCA, 35 P.S. §§ 6020.501(a) and 6020.505, the Department initiated a Prompt Interim Response action on March 4, 1999 to remove hazardous substances and contaminants from the Site.

47.     The Department's Prompt Interim Response included, but was not limited to, the removal and disposal of the following compounds: hydroxylamine, hydroxylamine sulfate, potassium hydroxide and potassium sulfate.

48.     The compounds referenced in paragraph 47, above are "hazardous substances" within the meaning of section 101(14) of CERCLA, 42 U.S.C. § 9601(14) and section 103 of HSCA, 35 P.S. § 6020.103, and/or "contaminants" within the meaning of section 101(33) of CERCLA, 42 U.S.C. § 9601(33) and section 103 of HSCA, 35 P.S. § 6020.103.

49.     Samples of runoff that the Department collected from the Site for disposal exhibited pH levels of greater than 12.5 and less than 2.0.

50.     Materials with a pH of greater than 12.5 or less than 2.0 are "hazardous substances" within the meaning of section 101(14) of CERCLA, 42 U.S.C. § 9601(14) and section 103 of HSCA, 35 P.S. § 6020.103.

51.     The presence of the hazardous substances at the Site, including, but not limited to, the hazardous substances referenced in paragraphs 46-50 above in tanks, drums, soil, materials and runoff at the Site constituted a "release" as defined by section 101(22) of CERCLA, 42 U.S.C. § 9601(22) and section 103 of HSCA, 35 P.S. § 6020.103.

52.    The presence of the hazardous substances at the Site, including, but not limited to, the hazardous substances referenced in paragraphs 46-50 above in tanks, drums, soil, materials and runoff at the Site constituted a "threatened release" as contemplated in section 107(a) of CERCLA, 42 U.S.C. § 9607(a) and section 702 of HSCA, 35 P.S. § 6020.702, and a "threat of a release" as contemplated in section 507 of HSCA, 35 P.S. § 6020.507.

53.    The Department completed the Prompt Interim Response on May 18, 1999.

54.    The Prompt Interim Response action was carried out at the Site in a manner not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").

**<u>Response Costs</u>**

55.    The Department has incurred costs and will continue to incur costs for responses related to the Site, as "response" is defined in section 101(25) of CERCLA, 42 U.S.C. § 9601(25) and section 103 of HSCA, 35 P.S. § 6020.103.

56.    On July 29, 2000, the Department placed a notice in the *Pennsylvania Bulletin* to publish the opening and closing dates of the comment period and the date and time of the public hearing regarding the Department's documentation of its Site related response costs in the Administrative Record pursuant to section 506 of HSCA, 35 P.S. § 6020.506.

57.    On July 29, 2000, the Department placed a notice in *The Morning Call* to publish the opening and closing dates of the comment period and the date and time of the public hearing regarding the Department's documentation of its Site related response costs in the Administrative Record pursuant to section 506 of HSCA, 35 P.S. § 6020.506.

58.    Pursuant to section 506(b) of HSCA, 35 P.S. § 6020.506(b), the Department mailed notices to known responsible parties to inform them of the opening and closing dates of

the comment period regarding the Department's documentation of its Site related response costs in the Administrative Record.

59.    On May 18, 2000, the Department mailed demand letters pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a) and section 702(b) of HSCA, 35 P.S. § 6020.702(b) to CSI, Ward, Heath, PPT, and Lehigh requesting reimbursement for its response costs.  These demand letters included documentation that the Department had incurred response costs totaling $691,164.40 as of March 31, 2000.

60.    With respect to all Defendants listed in paragraph 59 above, prejudgment interest has been and is accruing on the Department's response costs as documented in its demand letter since May 18, 2000.

61.    To date, the total amount of the Department's response costs associated with the Site, including prejudgment interest accruing since May 18, 2000, is in excess of $785,000.00.

62.    The Defendants have not reimbursed the Department for any response costs incurred by the Department relating to the Site.  The Defendants are liable to the Department for all response costs associated with the Site pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a) and sections 507, 701 and 702 of HSCA, 35 P.S. §§ 6020.507, 6020.701 and 6020.702.

63.    Each and every Defendant named herein is jointly and severally liable to the Department under section 107(a) of CERCLA, 42 U.S.C. § 9607(a) and sections 507, 701 and 702 of HSCA, 35 P.S. §§ 6020.507, 6020.701 and 6020.702.

## COUNT I
## COMPREHENSIVE ENVIRONMENTAL RESPONSE
## COMPENSATION, AND LIABILITY ACT

64.    The allegations of Paragraphs 1 through 63 are realleged and incorporated by reference herein.

65.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) provides in part that the following persons shall be liable for all costs of removal or remedial action incurred by a State not inconsistent with the NCP:

(1)     the owner and operator of a vessel or facility,
(2)     any person who at the time of disposal of any hazardous substances owned or operated any facility at which such hazardous substances were disposed of, . . . .

66.     At all times relevant hereto, the Site was a "facility" as defined by section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

67.     The substances detected at the Site which are described in Paragraphs 46-50 above, are "hazardous substances" as defined by section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

68.     At all times relevant hereto, the conditions at the Site constituted a "release" and/or a "substantial threat of release" of "hazardous substances" and "pollutants or contaminants" into the "environment" within the meaning of sections 102(22), (14), (33) and (8) of CERCLA, 42 U.S.C. §§ 9601(22), (14), (33) and (8).

69.     All of the Defendants are "persons" within the meaning of section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

70.     At all times relevant hereto, Lehigh owned the Roble Road Property.

71.     At all times relevant hereto, Lehigh was an "owner" of the Site within the meaning of sections 101(20) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(20) and 9607(a).

72.     At all times relevant hereto, Readington was a general partner of Lehigh, and therefore was an owner of the Roble Road Property.

73.    At all times relevant hereto, Readington was an "owner" of the Site within the meaning of sections 101(20) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(20) and 9607(a).

74.    At all times relevant hereto, Adams was a general partner of Lehigh, and therefore was an owner of the Roble Road Property.

75.    At all times relevant hereto, Adams was an "owner" of the Site within the meaning of sections 101(20) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(20) and 9607(a).

76.    At all times relevant hereto, Quick was a general partner of Lehigh, and therefore was an owner of the Roble Road Property.

77.    At all times relevant hereto, Quick was an "owner" of the Site within the meaning of sections 101(20) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(20) and 9607(a).

78.    CSI, Ward and Heath were "operators" at the Site within the meaning of section 101(20) of CERCLA, 42 U.S.C. § 9601(20).

79.    At all times relevant hereto, CSI conducted operations at the Site which resulted in the release and substantial threat of release of hazardous substances, pollutants and contaminants into the environment.  At all times relevant hereto, CSI maintained actual control of, and actively participated in, CSI's possession and handling of hazardous substances, pollutants and contaminants.

80.    At all times relevant hereto, Ward was a corporate officer of CSI, serving as President of CSI.  At all times relevant hereto, Ward maintained actual control of, and actively participated in, the operation of CSI.  At all times relevant hereto, Ward maintained actual control of, and actively participated in, CSI's possession and handling of hazardous substances, pollutants and contaminants.

14

81.     At all times relevant hereto, Heath was the Operations Manager of CSI.  At all times relevant hereto, Heath maintained actual control of, and actively participated, in the operation of CSI.  At all times relevant hereto, Heath maintained actual control of, and actively participated in, CSI's possession and handling of hazardous substances, pollutants and contaminants.

82.     PPT is a successor corporation to CSI under the substantial continuity theory as applied by this Court.  *Atlantic Richfield Co. v. Blosenski*, 847 F.Supp. 1261 (E.D. Pa. 1994); *United States v. Atlas Minerals & Chems., Inc.*, 824 F.Supp. 46 (E.D. Pa. 1993).

83.     By letter to CSI's counsel dated March 31, 1999, CSI was informed that it may be a responsible person pursuant to section 701(a)(1) of HSCA, and that it could be responsible for the cost of any environmental investigations or cleanup actions at the Site.

84.     PPT purchased the assets of CSI almost one year after CSI was informed in writing that it could be responsible for the cost of any environmental investigations or cleanup actions at the Site.

85.     At the time PPT purchased the assets of CSI, PPT had knowledge or should have had knowledge of CSI's liability to the Department pursuant to CERCLA and HSCA.

86.     As a successor corporation to CSI, PPT is subject to the liability of an "operator" at the Site within the meaning of section 101(20) of CERCLA, 42 U.S.C. § 9601(20).

87.     The Department conducted "response" actions at the Site, within the meaning of section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

88.     The action taken by the Department at the Site constitutes a "removal" action within the meaning of sections 101(23) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(23) and

9607(a).

89.    The Department has incurred response costs in excess of $785,000 to carry out response actions at the Site.

90.    The Department will incur costs in the future through response activities consisting of ongoing enforcement actions related to the Site, as the term "response" is defined in section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

91.    The Department's costs for the response to the release and threatened release of hazardous substances at the Site were incurred and will be incurred in a manner not inconsistent with the NCP.

92.    The release and threat of release of hazardous substances at the Site constitute harms for which each of the Defendants is jointly and severally liable to the Department under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all response costs incurred by the Department and for all response costs that the Department will incur in the future in connection with the Site.

93.    Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2) and section 2201 of the Declaratory Judgment Act, 28 U.S.C. § 2201, authorize the entry of declaratory judgment on the Defendants' liability for the Department's response costs that will be binding on any subsequent actions by the Department to recover future response costs in connection with the Site.

**COUNT II**
**PENNSYLVANIA HAZARDOUS SITES CLEANUP ACT**

94.    Paragraph 1 through 93, above, are realleged and incorporated herein by reference.

95.    Section 701(a) of HSCA, 35 P.S. § 6020.701(a) provides in part that the following persons shall be responsible for a release or threatened release of a hazardous substance from a

site:

> (1) The person owns or operates the site:
> (i) when a hazardous substance is placed or comes to be located in or on a site;
> (ii) when a hazardous substance is located in or on the site, but before it is released; or
> (iii) during the time of the release or threatened release.

96.    Section 507(a) of HSCA, 35 P.S. § 6020.507(a) provides in part:

> **(a) General Rule.–**A responsible person under section 701 or a person who causes a release or threat of a release of a hazardous substance or causes a public nuisance under this act or causes a release or a substantial threat of release of a contaminant which presents a substantial danger to the public health or safety or the environment, or causes a release of a nonhazardous substance pursuant to section 501(g) shall be liable for the response costs and for damages to natural resources.

97.    At all times relevant hereto, the conditions at the Site constituted a "release" and/or a "substantial threat of release" of "hazardous substances" and/or "contaminants" within the meaning of sections 103 and 501(a) of HSCA, 35 P.S. § 6020.103 and 501(a).

98.    At all times relevant hereto, the Site was a "site" within the meaning of section 103 of HSCA, 35 P.S. § 6020.103.

99.    All of the Defendants are "persons" within the meaning of section 103 of HSCA, 35 P.S. § 6020.103.

100.    All of the Defendants named in this complaint are "responsible persons" within the meaning of sections 103 and 701 of HSCA, 35 P.S. §§ 6020.103 and 6020.701.

101.    At all times relevant hereto, Lehigh was an "owner" within the meaning of sections 103 and 701(a)(1) of HSCA, 35 P.S. §§ 6020.103 and 6020.701(a)(1).

102.    At all times relevant hereto, Readington, Adams, and Quick were "owners" within the meaning of sections 103 and 701(a)(1) of HSCA, 35 P.S. §§ 6020.103 and 6020.701(a)(1).

103. At all times relevant hereto, CSI, Ward, and Heath were "operators" at the Site within the meaning of sections 103 and 701(a)(1) of HSCA, 35 P.S. §§ 6020.103 and 6020.701(a)(1).

104. At all times relevant hereto, CSI operated, or otherwise controlled activities at, the Site.

105. At all times relevant hereto, Ward operated, or otherwise controlled activities at, the Site.

106. At all times relevant hereto, Heath operated, or otherwise controlled activities at, the Site.

107. As a successor corporation to CSI, PPT is subject to the liability of an "operator" at the Site within the meaning of sections 103 and 701(a)(1) of HSCA, 35 P.S. §§ 6020.103 and 6020.701(a)(1).

108. The Defendants caused a public nuisance under HSCA within the meaning of sections 507(a) and 1101 of HSCA, 35 P.S. §§ 6020.507(a) and 1101.

109. The Defendants caused a release or a substantial threat of release of a contaminant which presented a substantial danger to the public health or safety or the environment.

110. The actions taken by the Department at the Site constitute "response" actions at the Site, within the meaning of section 103 of HSCA, 35 P.S. § 6020.103, including, but not limited to, an "interim response" action within the meaning of sections 103 and 702(a)(1) of HSCA, 35 P.S. §§ 6020.103 and 6020.702(a)(1).

111.    The Department's costs incurred for the interim response are reasonable in light of the information available to the Department at the time the interim response was taken.

112.    Pursuant to section 702(b) of HSCA, 35 P.S. §§ 6020.702(b), interest on the outstanding unpaid balance of the Department's response costs accrues at a rate of 6 % annually.

113.    The Department has incurred response costs in excess of $785,000.00 to carry out response actions at the Site, including interest, and including the oversight of activities conducted by remediation contractors, and including administrative costs related to enforcement and cost recovery actions.  Section 103 of HSCA specifically includes oversight and administrative activities in the definition of "response."

114.    All of the Defendants are strictly liable, pursuant to sections 507 and 702 of HSCA, 35 P.S. §§ 6020.507 and 6020.702, for response costs, including prejudgment interest, incurred by the Department which result from the release or threatened release of hazardous substances and contaminants at the Site.

115.    The release and threat of release of hazardous substances and contaminants at the Site constitute harms for which each of the Defendants is jointly and severally liable to the Department under sections 507 and 702 of HSCA, 35 P.S. §§ 6020.702 and 6020.507, for response costs incurred by the Department and for response costs that the Department will incur in the future in connection with the Site.

## COUNT III
## PENNSYLVANIA DECLARATORY JUDGMENT ACT

116.    Paragraphs 1 through 115, above, are alleged and incorporated herein by reference.

117.    The Declaratory Judgment Act, 42 Pa.C.S.A §7532, empowers courts within their

respective jurisdictions to "declare rights, status and other legal relations." These declarations "shall have the force and effect of a final judgment or decree."

118.    The Department will incur costs in the future through response activities consisting of ongoing enforcement actions related to the Site, as the term "response" is defined in section 103 of HSCA, 35 P.S. § 6020.103.

119.    All of the Defendants are strictly liable for future response costs incurred by the Department which result from the release or threatened release of hazardous substances and contaminants at the Site as provided for in sections 507 and 702 of HSCA, 35 P.S. §§ 6020.507 and 6020.702.

120.    The release and threat of release of hazardous substances and contaminants at the Site constitute harms for which each of the Defendants is jointly and severally liable to the Department under sections 507 and 702 of HSCA, 35 P.S. §§ 6020.507 and 6020.702, for response costs the Department will incur in the future in connection with the Site.

## PRAYER FOR RELIEF

WHEREFORE, the Department prays that this Court:

1.    Enter judgment against the Defendants, jointly and severally, in favor of the Department, for all response costs incurred by the Department in response to the release or threat of release of hazardous substances and contaminants at the Site, including, but not limited to, interest as provided for in section 107(a) of CERCLA, 42 U.S.C. § 9607(a), section 702(b) of HSCA, 35 P.S. § 6020.702(b) and enforcement costs;

2.    Enter a declaratory judgment on liability, pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), section 2201 of the Declaratory Judgment Act, 28 U.S.C. §

2201, and section 7532 of the Pennsylvania Declaratory Judgments Act, 42 Pa.C.S.A. § 7532,

against the Defendants, jointly and severally, in favor of the Department, that will be binding on

any subsequent action or actions to recover further response costs to be incurred by the

Department in response to the release or threat of release of hazardous substances at the Concept

Sciences, Inc. Site;

3.    Retain jurisdiction over this matter until such time as all response actions have

been taken and all costs and damages paid;

4.    Award to the Department its costs and fees in this action; and

5.    Grant such other relief as this Court deems appropriate.

Respectfully submitted.

FOR THE COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF ENVIRONMENTAL PROTECTION:


_____
Paul R. Brierre
Assistant Counsel
Attorney I.D. No. 68383


_____
Michael T. Ferrence
Assistant Counsel
Attorney I.D. No. 72405

Office of Chief Counsel
2 Public Square
Wilkes-Barre, PA 18711-0790
(570) 826-2519

917cmplt.csi

DATE:  May 17, 2002